250-06/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BOTTIGLIERI DI NAVIGAZIONE SPA,

                Plaintiff,

-against-

TRADELINE LLC,

                Defendant.
----------------------------------------------------------x

06 CIV 3705 (LAK)

**HABERGHAM DECLARATION IN SUPPORT OF MOTION TO <u>VACATE ATTACHMENT</u>**

JOHN HABERGHAM, pursuant to Title 28, §1746 of the United States Code, hereby declares and says the following under penalty of perjury:

    1.    I am a solicitor of the Supreme Court of England and Wales and am a partner with the law firm of Andrew M. Jackson, Essex House, Manor Street, Hull, HU1 1XH, England. I make this declaration on behalf of defendant Tradeline LLC in support of Tradeline's application to vacate the attachment of its funds in this action.

    2.    Insofar as the contents of this declaration are within my own knowledge, they are true. Insofar as the contents of this declaration are not within my own direct knowledge, they are true to the best of my information and belief.

    3.    In January 2001, Defendant Tradeline, as charterer, entered into a contract of charter party with Plaintiff Bottiglieri Di Navigazione SpA ("BDN"), as disponent owner for the carriage of a cargo of corn and soya bean meal from Argentina to Iran aboard the M/V KAVO DELFINI. BDN was not the actual owner of the M/V KAVO DELFINI, but instead chartered the vessel from its actual owner, Fortune Marine SA, Liberia (hereinafter, "Head Owners"), pursuant to a charter party contract between those two entities dated February 9th, 2001.

NYDOCS1/263637.2

4. It is reported that the corn arrived at Iran in April, 2001 in allegedly damaged condition, and the receivers reportedly brought an action against the Head Owners to recover for the alleged cargo damages. Head Owners reportedly settled the cargo claim directly with the receivers of the corn for approximately $2,080,000.

5. To the extent that the damage to the corn was caused by the unseaworthiness of the vessel, payment for such damage would be the responsibility of the Head Owner and there would be no indemnity claim for this amount which could properly be passed "down the line" by the Head Owners to BDN and from BDN to Tradeline.

6. I understand Head Owners, in or about October 2001, demanded arbitration against Plaintiff BDN for various claims. I further understand Head Owners asserted a claim for amounts paid in resolving the dispute with the cargo receivers, load port and discharge port demurrage, and, later revised the claim to include detention damages, breach of contract damages, the cost of increased insurance premiums ("calls"), plus interest on these sums.

7. None of Head Owners' claims against BDN are proven, and valid defenses to the demurrage and detention claims may be pursued. The cause and amount of the damage to the corn and whether the Head Owners acted reasonably in settling the claim by the receivers is unproven. Further, the claims with respect to breach of contract and increased insurance premiums do not even appear to be well-founded.

8. In turn, on or about 25th October 2001, BDN presented the Head Owner's same claims to Tradeline, demanding arbitration against Tradeline *in indemnity*. Tradeline appointed its arbitrator, Mr. Tim Rayment, on 7th November 2001.

9.   Both Head Owners and BDN have appointed arbitrators (with BDN appointing Mr. Rayment as its arbitrator). I am aware that other than the appointment of arbitrators, the arbitration, now nearly 5 years old, has not progressed one iota. As BDN itself admits, Head Owners have still not made any formal submissions whatsoever to advance their claim against BDN.

10.   To say that the head arbitration between Head Owners and BDN has stalled is an understatement. Should Head Owners wish to proceed with their claim against BDN, they would have great difficulty, as the claim is by now quite stale. Witnesses may be difficult or impossible to locate and their memories may well have faded. Documents and other evidence may by now be lost. This problem is particularly acute in the way this case and the nature of the Head Owners' claim has been developed. Should the arbitration ever progress, some of the core issues are going to be the factual circumstances of the loading of this vessel at Rosario, Argentina; where the corn which made up this cargo was stored; whether it came from one or more sources; and what were, for example, the moisture qualities of the corn from those various sources. Certainly, the corn that was at issue has by now been lost, consumed or destroyed and is no longer available for inspection. The samples from the load port similarly are now probably no longer available, and the condition of the ship and the relevant cargo hold(s) has also likely changed over the last five years. The loss of this evidence prejudices Tradeline because it prevents the defendant herein from making its own investigation of the facts which would enable Tradeline to make a fair evaluation of the merits of the case and to mount its own defense. I am not aware of any arbitration still at this primordial

stage that has ever been pursued after such a lengthy delay, and believe that if any such cases do exist, they must be exceedingly rare.

11. It is my understanding from discussions with BDN's solicitors that BDN has not been required to post any security in favor of Head Owners with respect to this dispute.

12. The charter party contract between BDN and Tradeline is subject to English law. Under English law it is well-established and beyond dispute that a claim for indemnity does not become ripe until, at the earliest, either BDN's liability to Head Owners has been ascertained by an arbitration award or compromise, or until the claimant or BDN has actually paid the claim for which it seeks indemnity from another. *See, e.g.,* The Caroline P [1984] 2 Lloyds Law Reports 466.

13. BDN has not made any payment – or even posted any security – with respect to the Head Owner's claims that are subject to arbitration. Under English law, BDN's claim for indemnity against Tradeline is unripe. BDN, although it has demanded arbitration with Tradeline, is not free under English law to pursue its arbitral claim against Tradeline until it has resolved its dispute with the Head Owner at the earliest either by an arbitration award or by making some payment to the Head Owner.

14. Further, despite the fact that the issues in the head arbitration (should it go forward) might be similar to the issues in the arbitration between BDN and Tradeline, consolidation of the two arbitrations is simply not available under English law. While there is the possibility of holding concurrent hearings, given that Head Owners have yet to submit their claim – now some five years after the alleged damage to the cargo – there seems little point in raising the issue of concurrent hearings at present. In any event, even

if the parties agreed to holding concurrent hearings, such agreement would serve primarily as a cost-saving device – it would not change the fact that BDN's case against Tradeline is unripe, as an award against BDN (or a settlement by them) would need to occur before any liability of Tradeline, if any, were triggered.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Hull, England
       28th June 2006

By: _____
    John Habergham