HEALY & BAILLIE, LLP
Attorneys for Plaintiff
BOTTIGLIERI DI NAVIGAZIONE SPA
61 Broadway
New York, New York 10006
(212) 943-3980
Thomas H. Belknap, Jr. (TB-3188)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOTTIGLIERI DI NAVIGAZIONE SPA<br><br>Plaintiff,<br><br>-against-<br><br>TRADELINE LLC,<br><br>Defendant. | Docket No.: 06 Civ. 3705 (LAK) |

## DECLARATION OF BENJAMIN OLBOURNE IN OPPOSITION TO THE MOTION BY TRADELINE LLC TO VACATE ATTACHMENT

**BENJAMIN RUPERT OLBOURNE**, pursuant to Title 28, §1746 of the United States Code, hereby declares and says the following under penalty of perjury:

Introduction

1. I am a practising Barrister at 20 Essex Street Chambers, 20 Essex St, London WC2R 3AL, United Kingdom. I attach a copy of my C.V. as Exhibit A to this Declaration.

2. I have been instructed by the legal representatives of Bottiglieri di Navigazione SpA ("BDN") to provide an expert opinion on certain questions of English law that have arisen in legal proceedings between it and Tradeline

LLC ("Tradeline") in the United States District Court for the Southern District of New York (Claim No. 06 CIV 3705 (LAK)). In particular, I have been asked to consider the assertion made on behalf of Tradeline that, under English law, the filing of a cause of action for an indemnity in respect of liability to a third party before the filing party has actually incurred an obligation or liability to the third party is premature: see *Tradeline's Memorandum of Law in Support of Motion to Vacate Attachment* ("*Memorandum of Law*"), p. 12.

3. For the purposes of preparing this Declaration, I have been provided and have relied upon copies of the following documents:

   (1) Tradeline's *Memorandum of Law* and the supporting Declarations of John Habergham ("the Habergham Declaration") and Captain Punnoli Iruppattil Somnath;

   (2) a charterparty dated 9 February 2001 between Gourdomichalis & Co, as agents for the disponent owners of the M/V "Kavo Delfini" ("the Head Owners" and "the Vessel" respectively), and BDN ("the Head Charter"); and

   (3) a charterparty dated 25 January 2001 between BDN and Tradeline ("the Sub-Charter").

Background

4. The factual background in which the question of law set out above arises is set out briefly, but sufficiently for the purposes of this Declaration, at paragraphs 3-4, 6, 8 and the first sentence of paragraph 9 of the Habergham Declaration. I need only refer to two additional matters.

5. First, the Head Charter and the Sub-Charter included identical arbitration provisions (clauses 24) that provided for *"LMAA Arbitration"*, that is arbitration under the rules and terms of the London Maritime Arbitrators Association, in the following terms: *"All disputes or differences arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London, English law to apply"*.

6. Secondly, although neither the Head Owners in the Head Charter reference or BDN in the Sub-Charter reference have served claim submissions, I am informed that all of the claims that Head Owners have intimated to BDN and which BDN are seeking to pass on to Tradeline are for breaches of the Head Charter and the Sub-Charter respectively.

The accrual of causes of action under English law

7. In its *Memorandum of Law*, Tradeline asserts that, under English law, a cause of action for an implied contractual indemnity does not accrue until the purported indemnitee has actually incurred an obligation or liability to a third party: see pp 5-6, and also the Habergham Declaration, paragraph 12. The position under English law is more nuanced than is reflected in this assertion.

8. The basic or general rule with respect to causes of actions in contract is that the right to sue for a breach of contract accrues *"as soon as there is a breach of contract, notwithstanding that at that time no damage (beyond the purely nominal) has been suffered by the claimant"*: Gee, *Limitation Periods* (4th ed, 2002), p. 172 [Exhibit B]

9. So far as indemnity contracts are concerned, a distinction may be drawn between (1) actions based on breach of contract, (2) actions based on express

indemnity agreements, and (3) actions based upon implied indemnities. The rules for each of these categories are as follows:

> (1) a claim for an indemnity based on a breach of contract will accrue in accordance with the basic or general rule for breach of contract, that is the cause of action will accrue at the time of the breach of contract.

> (2) a claim for an indemnity based on an express indemnity agreement will accrue in accordance with the terms of that agreement. Thus, if the indemnity is expressed as being against liability, it is likely that the cause of action will accrue when liability is incurred. Otherwise, the cause of action will normally accrue only when liability to the third party has been established and ascertained.

> (3) a claim for an indemnity based on an implied indemnity will normally be taken to be an indemnity against the discharge of a liability rather than against the incurring of that liability and the cause of action will be regarding as having accrued only when the liability is established and quantified: see, generally, Gee, *id*, pp 182-184 [Exhibit B]

10. These three categories, and the rules applicable to each of the categories, were suggested by Mr. Justice Neill in *Telfair Shipping Corporation v. Inersea Carriers SA ("The Caroline P")* [1984] 2 Lloyd's Rep. 466, 474-475 [Exhibit C]. In that case, the owners of a vessel had been held liable in Iranian court proceedings to the receivers of a cargo discharged in Iran. The owners sought to recover their losses from their charterers on the basis that the charterers had issued bills of lading that imposed upon the vessel's

owners obligations more onerous than those they had agreed to accept under the charterparty.

11. It was common ground that although the charterparty did not contain an express indemnity, the owners were entitled to the benefit of an implied identity: see p. 469 of the judgment. The indemnity, therefore, fell within the third of the categories identified above. Neill J. held that the scope of the indemnity was such that the owners were entitled to be indemnified against the consequences of the master signing the bills issued by the charterers, and he held further that, being of this nature, the indemnity in question did not become enforceable by action against the charterers until at the earliest the liability of the owners to the receivers had been ascertained by the Iranian court: pp 475-476.

12. However, Neill J. also stated that the owners' right to recover could have been formulated as a claim for breach of an implied term of the charterparty, namely the presentation for signature of non-contractual bills of lading, in which case the cause of action would have arisen at the moment of breach: p. 475.

13. Neill J.'s judgment in *The Caroline P* has subsequently been followed and approved. For example, in *The "Fanti"* and *The "Padre Island" (No. 2)* [1989] 1 Lloyd's Rep. 239 [Exhibit D], Lord Justice Bingham (as he then was) observed, at p. 255, that although there had been judicial discussion for a number of years of the question whether a right of indemnity against liability arises when the event giving rise to the liability occurs or when the liability is established and ascertained, there was no longer a need to discuss these cases in detail *"because it is impossible to doubt the correctness of Mr. Justice Neill's observation"* in *The Caroline P*. The indemnity in question in

these cases was an express right on the part of a P&I club member to be indemnified by the club "*against all or any ... claims and expenses which he shall have become liable to pay and shall in fact have paid ...*". In accordance with the rule for the second category of indemnity identified by Neill J., Bingham L.J. held that the time at which the member's cause of action against the club arose depended on the construction of the contract and that, in the circumstances, this was only when the member became liable to pay the sum awarded against it in court proceedings: p. 256.

14. Both this decision and *The Caroline P.* were considered and a similar conclusion reached in *The "Faial"* [2000] 1 Lloyd's Rep. 473 [Exhibit E], a case which also involved an express indemnity clause, and in *The "Catherine Helen"* [1998] 2 Lloyd's Rep. 51 [Exhibit F], where Mr. Geoffrey Brice Q.C., sitting as a Deputy Judge in the Commercial Division of the High Court, set out Neill J.'s conclusion in relation to implied indemnities: p. 518. *The Caroline P* has also been referred to and approved in London arbitrations: see, for example, *London Arbitration 32/04* and the summary of the Award published in Lloyd's Maritime Law Newsletter, 24 November 2004 [Exhibit G].

Is BDN's claim for an indemnity premature?

15. Against this background, I now turn to consider the question whether, under English law, BDN's claim against Tradeline for an indemnity in respect of its liability to the Head Owners was premature.

16. As I indicated above, although the respective claimants in the Head Charter reference and the Sub-Charter reference have not yet served their claim submissions, it is understood that their respective claims are for breach of contract. Specifically, it is understood that BDN's claim against Tradeline

for an indemnity in respect of its liability to the Head Owners is based on Tradeline's alleged breach or breaches of the Sub-Charter.

17. Therefore, in accordance with the rules formulated in *The Caroline P*, BDN's claim to be indemnified by Tradeline will have arisen, and its cause of action for an indemnity will have accrued, at the time of Tradeline's alleged breaches of the Sub-Charter, namely in or around April 2001. BDN's commencement of arbitration against Tradeline in October 2001 can not, therefore, be regarded as premature as a matter of English law.

18. The merits of Tradeline's position can also be examined from the point of view of limitation. As BDN's claim is founded on a *"simple contract"* – that is a contract that is not a loan or a specialty for the purposes of the *Limitation Act* 1980 – it must be commenced within six years of the date on which the cause of action accrued: *Limitation Act* 1980, section 5. This date will be the date of the breach of the contract, not the date on which any damage was suffered or any liability ascertained: see paragraph 8 above.

19. Therefore, if BDN was required to wait before commencing its claim against Tradeline until its liability to the Head Owners had been ascertained in the Head Charter reference – which is likely to be after April 2007 since no submissions have yet been served in that reference – when it then sought to commence its action against Tradeline, it would be open to Tradeline to contend that BDN was time-barred from seeking an indemnity: see, for example, *The "Stephanos"* [1989] 1 Lloyd's Rep.506, at p. 509 [Exhibit H].

20. An analogous situation was considered by Mr. Geoffrey Brice Q.C. in *The "Catherine Helen"*. His Lordship concluded that it would be a *"strange result"* if a contractual time-bar operated to defeat a shipowners' right to an

implied indemnity as against charterers because cargo-owners had commenced formal proceedings against the owners only after the contractual limitation period had expired in circumstances where there had been a clear intimation during the limitation period of the claim against the owners and the owners had formulated a claim within the limitation period against the charterers: pp 513, 518. A similarly "*strange result*" would arise in the present case if BDN's claim for an indemnity against Tradeline were to be regarded as premature until the Head Owners' claim had had been formally determined but, by that time, it would then time-barred in circumstances where Tradeline had been aware of the claim made against BDN and BDN had clearly indicated its intention to pass that claim on to Tradeline.

The Habergham Declaration

21. In paragraphs 12-14, Mr. Habergham purports to give evidence as to English law. The first assertion made is that, "*Under English law it is well-established and beyond dispute that a claim for indemnity does not become ripe until, at the earliest, either BDN's liability to Head Owners has been ascertained by an arbitration or compromise, or until the claimant or BDN has actually paid the claim for which it seeks indemnity from another.*" The *Caroline P.* is cited as authority for this assertion.

22. The decision of Neill J. in *The Caroline P.* has been considered in detail above. It is clear that, at least in respect of the indemnity sought by BDN – that is, an indemnity in respect of breach of contract – the position under English law is that the claim for, and a cause of action in respect of, such an indemnity arises as at the time of the breach of contract.

23. In paragraph 13, Mr. Habergham asserts that, "*BDN, although it has demanded arbitration with Tradeline, is not free under English law to pursue

*its arbitral claim against Tradeline until it has resolved its dispute with the Head Owner at the earliest either by an arbitration award or by making some payment to the Head Owner.*" No authority is cited on this point which is, in any event, untenable as a matter of English law and practice: see, for example, *The "Catherine Helen"* referred to above. Moreover, this assertion fails to draw the obvious and necessary distinction between the **existence** of a claim (for example, for an indemnity), for which a party may be entitled to seek protection by way of security or an attachment of property, and the **enforcement** of that claim through the pursuit of arbitration proceedings.

24. Finally, in paragraph 14, Mr. Habergham averts to the possible consolidation of the Head Charter and Sub-Charter references. Contrary to what Mr. Habergham asserts, consolidation is available under English law, but it is subject to the agreement of all the parties: see, in respect of LMAA arbitration specifically, Ambrose & Maxwell, *London Maritime Arbitration* (2nd ed., 2002), pp 196-199 [Exhibit I].

Conclusion

25. For the reasons set out above, so far as English law is concerned, BDN's commencement of arbitral proceedings against Tradeline seeking an indemnity in respect of its potential liability to the Head Owners was timely and not premature.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct

Dated: London, England
      26 July 2006

By: _____
Benjamin Rupert Olbourne