UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
BOTTIGLIERI DI NA VIGAZIONE SPA,

                            Plaintiff,


              -against-                                           06 Civ. 3705 (LAK)


TRADELINE LLC,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**MEMORANDUM OPINION**


              Appearances:


                            Thomas H. Belknap, Jr.
                            HEALY & BAILLIE, LLP
                            *Attorneys for Plaintiff*


                            Michael E. Unger
                            Lawrence J. Kahn
                            FREEHILL HOGAN & MAHAR, LLP
                            *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

              This is an action in admiralty stemming from the delivery of allegedly damaged corn.

Defendant here moves to vacate an order of maritime attachment on the ground that plaintiff's claim

is unripe.

2

*Facts*

In January 2001, the parties entered into a charter party whereby defendant agreed to charter the M/V Kavo Delfini from plaintiff, the disponent owner, to carry corn and other cargo from Argentina to Iran.[1]  Plaintiff, in turn, entered into a charter party with the vessel's actual owner (the "Owner").[2]  The substantive provisions of the two charter parties are substantially the same.[3] Both require that contract disputes be arbitrated in London under English law.[4]

The delivered shipment was unsatisfactory to the receiving party for reasons not relevant to this case, and the Owner settled the receiving party's claim for upwards of $2 million.[5] The Owner announced its intention to commence arbitration against plaintiff for breach of their charter party.[6]  Plaintiff, in turn, announced its intention to commence arbitration against defendant for the same claims being asserted by the Owner.[7]

The arbitrations have not progressed much over the years, although there recently has been some movement, the relevance of which the parties dispute.  It is uncontested, however, that

---

[1]      Whelan Decl. ¶¶ 5-6 and Ex. B; Habergham Decl. ¶ 3.

[2]      Whelan Decl. ¶ 4 and Ex. A.

[3]      Compare Whelan Decl. Exs. A and B.

[4]      *See id.* § 24.

[5]      Whelan Decl. ¶ 6.

[6]      Whelan Decl. ¶¶ 9-13 and Ex. E.

[7]      Whelan Decl. ¶¶ 8, 14; Habergham Decl. ¶ 8.

3

there has been no settlement in the dispute between plaintiff and the Owner, no finding that plaintiff

is liable to the Owner for damages, and no award rendered against plaintiff.[8]

In 2006, plaintiff commenced the instant action by filing a complaint seeking the

attachment of close to $3 million, an amount that included the potential liability plaintiff faced in

its arbitration with the Owner and fees and costs for the two arbitrations.[9]  The complaint alleged that

"[p]ursuant to the Charter and/or as a consequence of Defendant's breach thereof, Defendant is liable

to indemnify Plaintiff for all amounts claimed against it by [the Owner]."[10]  The Court issued the

order of maritime attachment on May 15, 2006.

*Discussion*

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims

governs the standards for issuing orders of attachment, and Rule E(4)(f) sets forth a procedure by

which such attachments can be contested.  Recently, in *Aqua Stoli Shipping Ltd. v. Gardner Smith*

*Pty Ltd.*, the Second Circuit clarified the standards for issuance and vacatur of attachment orders:

> "[I]n addition to having to meet the filing and service requirements of Rules
> B and E, an attachment should issue if the plaintiff shows that 1) it has a valid
> prima facie admiralty claim against the defendant; 2) the defendant cannot be
> found within the district; 3) the defendant's property may be found within the
> district; and 4) there is no statutory or maritime law bar to the attachment.

---

[8]

Whelan Decl. ¶¶ 17, 21 (conceding that "no formal submissions have been served in either of the arbitrations" and that settlement discussions have been "regrettably unsuccessful to date").  By letter dated August 18, 2006, plaintiff informed the Court that the Owner had served formal submissions on plaintiff.

[9]

Cpt. ¶¶ 8-11.

[10]

*Id.* ¶ 12.

Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E."[11]

Here, defendant's principal argument is that plaintiff's indemnity claim is unripe under English law and that plaintiff therefore has failed to establish a "valid prima facie admiralty claim." Plaintiff counters that its claim should be styled as one of breach of contract, rather than pure indemnity, and thus is ripe.

The parties agree that the seminal English case addressing when indemnity claims accrue is *Telfair Shipping Corp. v. Intersea Carriers S.A. (The "Caroline P")*.[12] *The Caroline P*, after an exhaustive survey of the case law, concluded that:

> "it is possible to identify at least three ways in which a person (A) who has become liable to (B) may be able to obtain redress from (C).
>
> "The first way is by an action for damages for breach of contract (or warranty). In such a case (A) will be in a position to claim that the incurring of his liability to (B) flowed directly from an act of (C) which constituted a breach of a contract between (A) and (C) or of a warranty given by (C) to (A). . . . The cause of action will date from the date of breach.
>
> *       *       *
>
> "The third way in which (A) may claim against (C) in respect of sums which he has had to pay to (B) is under an implied indemnity. As I understand the matter, such an implied indemnity would prima facie be a general indemnity of the kind recognized by the common law. . . . [and (A)] could not sue [(C)]

---

[11]

460 F.3d 434, 445 (2d Cir. 2006) (footnote omitted). *Aqua Stoli* noted also "other limited circumstances," not applicable here, where vacatur would be appropriate. *Id.*

[12]

[1984] 2 Lloyd's Rep. 466. *See also* ANDREW MCGEE, LIMITATIONS PERIODS (4th ed. 2002) 183 (calling *The Caroline P* "the leading authority in [the area of indemnity contracts]").

unless he could aver payment to [(B)]."[13]

      *The Caroline P* does not precisely lay out how to distinguish between these theories. It appears, however, that the former contemplates a contract defining A's potential liability to B and a breach by C that expands the scope of that potential liability.  Thus, the mere exposure to greater liability is the injury to A.[14]   The latter, in contrast, includes the common indemnity scenario whereby C's act causes A to breach its pre-existing contract with B.

      Here, plaintiff does not allege that any act by defendant increased plaintiff's potential liability to the Owner.  Rather, plaintiff's claim falls squarely within *The Caroline P*'s latter category.  This is clear from the allegations of the complaint, which trace the bulk of the monetary claim made against defendant to the damages claimed by the Owner and state plainly that "Defendant is liable to indemnify Plaintiff for all amounts claimed against it by [the Owner]."[15]  This claim for indemnity is not ripe under English law.  Plaintiff thus has not established the "valid prima facie admiralty claim" required under *Aqua Stoli*.

      Further, although certain procedural rules authorize the assertion of unripe substantive claims, no such mechanism is available here.  For example, Federal Rule of Civil Procedure 14

---

[13]

      *The Caroline P*, 2 Lloyd's Rep. at 474-75 (quotations and citations omitted).  The second way identified, under an express indemnity provision, is not relevant to this case because the charter party contained no such provision.

[14]

      *See, e.g.*, *Cathiship S.A. v. Allanasons Ltd. (The "Catherine Helen")*, [1998] 2 Lloyd's Rep. 511, 517 (finding that plaintiffs had "a present and subsisting claim . . . for breach of the terms of the charter-party in that the master has been obliged to sign bills of lading which were more onerous to owners than the obligations assumed by the owners under the charter-party" but noting that "such a breach is, without more, of no practical consequence (i.e. would involve a claim for no more than nominal damages)").

[15]

      Cpt. ¶¶ 8, 12.

permits impleader of any person "who is or *may be* liable to the third-party plaintiff."[16]  The rule thus "permits a defendant to bring in a third-party defendant even though the defendant's claim is purely inchoate – i.e., has not yet accrued under the governing substantive law – so long as the third-party defendant may become liable for all or part of the plaintiff's judgment."[17]  Nothing in Rule B suggests that a similar mechanism is available here.

Finally, plaintiff argues that the Court nonetheless has discretion to uphold an attachment order over an unripe claim.  There is authority suggesting that district courts have such discretion,[18] but the scope of a district court's discretion under Rule B has been significantly narrowed by *Aqua Stoli*, and it is unclear whether any such discretion is available to the Court today. In any event, the Second Circuit has made it clear that such discretion may be exercised only in very compelling circumstances.[19]  The Court finds no such circumstances present here.

---

[16]
    Fed. R. Civ. P. 14(a) (emphasis added).

[17]
    *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994).

[18]
    *Patricia Hayes Assocs., Inc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76, 82-83 (2d Cir. 2003).

[19]
    *Id.* (noting one case in which discretion was exercised involved "a claim that was premature when filed but certain to mature shortly (i.e., within a matter of hours)"); *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 58 (2d Cir. 2003) ("[W]hile a district court may in some circumstances exercise its discretion to disregard the prematurity of a plaintiff's claim, such a 'prematurity objection has been ignored only in isolated situations under peculiar factual circumstances.'") (quoting *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965)).

7

*Conclusion*

For the foregoing reasons, defendant's motion to vacate the order of attachment is granted.

SO ORDERED.

Dated:          February 6, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)