BLANK ROME LLP
Attorneys for Plaintiff
BOTTIGLIERI DI NAVIGAZIONE SPA
The Chrysler Building
405 Lexington Ave.
New York, New York 10174
(212) 885-8500
Jack A. Greenbaum (JG-0039)
Thomas H. Belknap, Jr. (TB-3188)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| BOTTIGLIERI DI NAVIGAZIONE SPA | |
|---|---|
| Plaintiff, | Docket No.: 06 Civ. 3705 (LAK) |
| -against- | |
| TRADELINE LLC, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY ENFORCEMENT OF ORDER VACATING ATTACHMENT

Plaintiff, Bottiglieri di Navigazione SPA ("Plaintiff") submits this Memorandum of Law in Support of its motion to stay the enforcement of this Court's Memorandum Opinion and Order dated February 6, 2007, which granted Defendant Tradeline LLC's ("Defendant") motion to vacate Process of Maritime Attachment and Garnishment ("PMAG") and release $242,909.03 of restrained funds.

Plaintiff chartered the M/V KAVO DELFINI from her owner and subchartered the ship to Defendant. The ship owner asserted claims against Plaintiff for damages incurred due to the conduct of the Defendant. That conduct was also a breach of the subcharter. Accordingly, Plaintiff contends that Defendant was in breach of the subcharter and further that Defendant

should indemnify Plaintiff for any sums for which Plaintiff is liable to the ship owner, plus the costs of defending the ship owner's claim and of prosecuting its claims against Defendant.

This Court's decision of February 6, 2007 determined that Plaintiff's claim against Defendant was a premature indemnity claim under English law, which governs the subcharter, and further exercised its discretion not to allow the attachment on that indemnity claim. In exercising its discretion, this Court took as its standard what it saw to be a significant narrowing of the District Court's scope of discretion by the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F. 3d 434 (2d Cir. 2006)

Plaintiff is appealing the Court's decision on the grounds this Court: (1) erroneously construed English law regarding the nature of Plaintiff's claim: (2) finally decided the issue of English law when it should only have decided whether Plaintiff's contentions regarding English law showed it had reasonable grounds or a prima facie case for the attachment; and (3) applied the wrong standard in exercising its discretion with respect to the indemnity aspect of the claim, as *Aqua Stoli* did not narrow the scope of discretion for upholding a maritime attachment, but only for vacating a maritime attachment.

## ARGUMENT

### A STAY, WITHOUT BOND, IS APPROPRIATE

This Bench has recognized that an order vacating a maritime attachment is immediately appealable. As stated in *Status Int'l S.A. v. M/V ESPERANZA C*, 1998 U.S. Dist. LEXIS 2825 (SAS) (S.D.N.Y. 1998):

> The Court in *Swift & Co. Packers*, 339 U.S. at 689, construed the language of § 1291 as permitting an immediate appeal from an order vacating a maritime attachment because "appellate review of the order . . . at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible."

2

A stay of judgment pending appeal is automatic upon the posting of a supersedeas bond. F. R. Civ. P. Rule 62(d). In this case, Plaintiff seeks a stay without a bond or with a minimal bond reflecting the fact that the only recoverable damages Defendant can suffer are the small administrative costs of an appeal. Defendant need not even suffer a loss of interest, since the funds can be paid into the Court Registry Investment System Interest Bearing Account.

> In determining whether to stay a judgment pending appeal, a court must consider (1) whether the petitioner is likely to prevail on the merits of his appeal, (2) whether, without a stay, the petitioner will be irreparably injured, (3) whether issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest . . . Each of these requirements will be applied flexibly according to the circumstances of each case. . . Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment. . . The bond requirement should not be eliminated or reduced unless doing so "does not unduly endanger the judgment creditor's interest in ultimate recovery."

*De la Fuente v. DCI Telecommunications, Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) (citations omitted). *See also E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835 F. 2d 277, 278 (Fed. Cir. 1987). Whether to grant a stay without a supersedeas bond is within the Court's sound discretion. *Cayuga Indian Nation v. Pataki*, 188 F. Supp. 2d 223, 254 (N.D.N.Y. 2002).

In the present case, Defendant is in the shoes of the "judgment creditor" appellee, adverted to in the foregoing quotation from *De la Fuente*. As noted above, Defendant's interests will not be "unduly endangered" by eliminating the requirement for a bond, as its exposure to recoverable costs is minimal and there is no need for Defendant to lose any interest on the restrained funds.

Turning now to the issues raised on a motion for a stay without a bond:

3

1. Likelihood of success on appeal.

A "likelihood" or "substantial possibility" is present when there is a serious legal question for the appellate court to decide. *Mohammed v. Reno*, 309 6. 3d 95, 100 (2nd Cir. 2002); *Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F. 2d 841, 844 (D.C. Cir. 1977)

A determination of foreign law is treated as a ruling on a question of law, not an issue of fact. F. R. Civ. P. Rule 44.1. Therefore, it is reviewable *de novo*. Defendant itself argued herein that the issue of English law on the nature of the claim is debatable (and that Plaintiff therefore allegedly failed to sustain its burden of proving grounds to uphold the attachment). In so contending, Defendant concedes the very point underlying a stay: A serious question of law exists.

Additionally, given Defendant's own position regarding the contentious nature of the English law, it was not for this Court appropriately to have made that determination, but for the English arbitrators and/or Court to do so. On a motion to vacate a maritime attachment under Supplemental Rule E(4)(f), it is not for this Court to resolve definitively, nor the Plaintiff's burden to prove, the ultimate facts in this case or the foreign law. *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F. Supp. 2d 318, 322 (S.D.N.Y. 2006) The Plaintiff's burden is only to show there are "reasonable grounds" or "probable cause" for the attachment. *Maersk, Inc. v. Neewra, Inc.*, 05 Civ. 4356 (RCC), 2006 U.S. Dist. LEXIS 53395, *20-21 (S.D.N.Y. Aug. 1, 2006); *Ullisses* at 323. Plainly, Plaintiff and this Court had reasonable grounds to issue and maintain the attachment in this case based on the strongly arguable law in both England and the U.S.

Finally, where the Court exercises its discretion in reliance on an arguably erroneous legal standard, appellate review is not about whether the Court abused its discretion, but whether

4

the Court has relied on incorrect law. *TCPIP Holding Co. Inc. v. Haar Communications Inc.*, 244 F. 3d 88, 92 (2d Cir. 2001) This Court relied on a perceived significant narrowing of the scope of its discretion by the *Aqua Stoli* decision. However, that decision narrowed the Court's discretion whether to vacate a maritime attachment, specifically whether an attachment could be vacated for want of need.[1] The Court expressly delimited the circumstances in which a District Judge may deny or vacate an attachment, and there was no specification of an indemnity claim among those circumstances. 460 F. 3d at 444-45. To the extent footnote 6 in *Aqua Stoli* raised a seemingly rhetorical question about who owns an electronic fund transfer, there was no intimation of a narrowing of the Court's discretion with respect to the grounds on which an attachment might be issued or upheld. Certainly, if the attachment herein had been of a bank account or a ship owned by Defendant, footnote 6 would have no bearing.

The foregoing is not meant to suggest that *Aqua Stoli* intentionally narrowed the Court's discretion to vacate an attachment based on an indemnity claim that is premature. Rather, our point is that *Aqua Stoli* has nothing to do with the issue, and a decision relying upon it to exercise discretion in favor of *vacatur* is reviewable *de novo*.

(2) <u>Irreparable injury to Plaintiff/Appellant</u>.

A stay of the Court's February 6, 2007 order is necessary in order to maintain the status quo during the appeal process, and to ensure that Plaintiff will retain security for its claims, which is the very foundation of Supplemental Rule B. *Winter Storm Shipping Ltd. v. TPI*, 310 F. 3d 263, 267-68 (2d Cir. 2002); *Aurora Maritime Co. v. Abdullah Mohammed Fahem & Co.*, 85 F. 3d 44, 48 (2d Cir. 1996) Although release of the funds would not divest the Court of *quasi in rem* jurisdiction, it would produce the manifestly undesirable consequence of leaving Plaintiff

---

[1] "Our review indicates that no district court countenanced the degree of discretion in <u>vacating</u> maritime attachments that Gardner Smith now advances." 460 F. 3d at 440-01 . (Emphasis added.)

5

with no security to assure satisfaction of an eventual judgment. The fact that the Court might in the future order Defendant to return the funds to this District would not be helpful if the Defendant lacks the funds to do so at that time.

The remarks at page 2 of this memorandum, borrowed from *Status Int'l S.A.*, quoting *Swift & Co. Packers*, regarding the necessity of an immediate appeal from an order vacating an attachment apply equally to an immediate release of the restrained funds and bear repeating:

> "appellate review of the order . . . at a later date would be an empty rite after the vessel [or funds] had been released and the restoration of the attachment only theoretically possible."

(3) Lack of prejudice to Defendant/Appellee.

As noted previously, no prejudice will inure to Defendant if its funds remain under attachment during the pendency of the appeal. The restrained monies can be placed in the Court's interest bearing account if interest is of concern to Defendant. Further, if Defendant is as financially secure as it claims to be, the loss of use of $240,000 for a period of a few months will not cause it injury. See *Borgships Inc. v. M/V MACARENA*, 92 CV 3119, 1993 U.S. Dist. LEXIS 16351 (E.D.La. Nov. 10, 1993) (limiting bond to 1,000 for costs of appeal).

(4) The public interest.

As discussed in *Winter Storm, Aurora*, and numerous other cases, Supplemental Rule B is itself the embodiment of the public interest in a maritime industry in which people will be willing to invest their time and money because the participants know that (1) a plaintiff will be able to obtain security for its claims despite the transient and peripatetic nature of the industry, and (2) a defendant will know that if it does not pay its debts or provide security, its assets will be subject to attachment or similar remedy, both here and abroad. Maritime attachment in one form or another is common in the law of maritime nations across the globe. As written by the Supreme Court in Re Louisville Underwriters, 134 U. S. 488, 493, 10 S. Ct. 587, 589, 33 L. Ed.

991 (1890):

> Courts of admiralty are established for the settlement of disputes between persons engaged in commerce and navigation, who, on the one hand, may be absent from their homes for long periods of time, and, on the other hand, often have property or credits in other places. In all nations, as observed by an early writer, such courts "have been directed to proceed at such times, and in such manner, as might best consist with the opportunities of trade, and least hinder or detain men from their employments." [Citation omitted.] In the same spirit this court has more than once said: "Courts of admiralty have been found necessary in all commercial countries, for the safety and convenience of commerce and the speedy decision of controversies, where delay would often be ruin." [Citations omitted.] <u>To compel suitors in admiralty (when the ship is abroad and cannot be reached by a libel in rem) to resort to the home of the defendant, and to prevent them from suing him in any district in which he might be served with a summons or his goods or credits attached, would not only often put them to great delay, inconvenience and expense, but would in many cases amount to a denial of justice.</u> (Emphasis added)

For the self-same reasons, maintaining during an appeal the security acquired by the exercise of Rule B serves precisely the same public interest.

## CONCLUSION

### VACATUR OF THE ATTACHMENT SHOULD BE STAYED AND NO BOND OR ONLY A MINIMAL BOND SHOULD BE REQUIRED

Dated: New York, N. Y.
February 21, 2007

Respectfully submitted,

BLANK ROME LLP
Attorneys for Plaintiff

By: *[signature]*

Jack A. Greenbaum (JG-0039)
405 Lexington Ave.
New York, N. Y. 10174
(212) 885-5000

7

611594.00005/6522084v.1